EDWARD DORAN BERNER, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 17511

December 21, 1988 765 P.2d 1144

*Morgan D. Harris,* Public Defender; *Susan Deems Roske,*
Deputy Public Defender, *R. Roger Hillman,* Deputy Public
Defender, Clark County, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Deputy District Attorney,
*George Assad,* Deputy District Attorney, Clark County, for
Respondent.

## OPINION

*Per Curiam:*

On August 20, 1985, eight-year-old Melissa told her step-mother that she had been sexually molested. She named Edward Doran Berner, the appellant, as her molester. Berner was subsequently arrested and tried before a jury. He was convicted of four counts of sexual assault of a minor and two counts of lewdness with a minor, and was sentenced to four consecutive life terms. For the reasons expressed in this opinion, the judgment is reversed and the case remanded for a new trial.

In our view, the court committed reversible error when it allowed a rebuttal witness for the prosecution to testify regarding a specific instance of appellant's conduct over objection. In light of our disposition of this issue, we need not consider appellant's other assignments of error.

Appellant's defense consisted of his denial of any wrongdoing, and the testimony of thirteen character witnesses. In rebuttal, the state introduced the testimony of one Pauline Czabot. Czabot described an incident which she claimed had occurred four years previously, when she was fifteen years old, in which the appellant allegedly made a remark to her that she interpreted as a sexual invitation. Czabot testified that she had once been alone with Berner in his apartment, and that he had said, "They are going to be gone for a while. If you'd like to, you know. . . ." Then, as she interpreted the movement of his body, she claimed Berner "jerked towards the bedroom."

In general, specific instances of conduct may not be proved by extrinsic evidence. NRS 50.085(3).[1] The use of uncharged bad acts to convict a defendant is heavily disfavored in our system of criminal justice. Such evidence is likely to be prejudicial or irrelevant, and forces the accused to defend himself against vague

---

[1] NRS 50.085(3):

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime, may not be proved by extrinsic evidence. They may, however, if relevant to truthfulness, be inquired into on cross-examination of the witness himself . . . subject to the general limitations upon relevant evidence and the limitations upon interrogation. . . .

and unsubstantiated charges. Shults v. State, 96 Nev. 742, 748, 616 P.2d 388, 392 (1980); McCormick on Evidence, § 42 (1984). Evidence of uncharged misconduct may unduly influence the jury, and result in a conviction of the accused because the jury believes he is a bad person. People v. Guerrero, 548 P.2d 366 (Cal. 1976). The use of specific conduct to show a propensity to commit the crime charged is clearly prohibited by Nevada law, NRS 44.045(1); Mayes v. State, 95 Nev. 140, 591 P.2d 250 (1979), and is commonly regarded as sufficient grounds for reversal. See Lataille v. Ponte, 754 F.2d 33 (1st Cir. 1985); United States v. Herrera-Medina, 609 F.2d 376 (9th Cir. 1979).

The prosecution had never attempted to question appellant about the incident involving Czabot. Instead, Czabot was produced as a rebuttal witness, giving the appellant no chance whatever to defend himself against her testimony. Indeed, the court refused to allow appellant to put on a surrebuttal witness, who might have been able to shed some light on the meaning of his remark.

In some fairly recent cases, we have allowed greater latitude in evidence presented to show aberrant sexual propensities. We have been careful, however, to require that such evidence must be probative of something beyond mere bad character, such as intent, motive or plan. Findley v. State, 94 Nev. 212, 577 P.2d 867 (1978); McMichael v. State, 94 Nev. 184, 577 P.2d 398 (1978) (overruled on other grounds). Subject to this requirement, evidence of alleged misconduct may be acceptable if three conditions are met: (1) the incident is relevant to the crime charged; (2) the incident is proven by clear and convincing evidence; and (3) the evidence is more probative than prejudicial. See United States v. DeLuna, 763 F.2d 897 (8th Cir.), cert. denied, 474 U.S. 980 (1985). Czabot's testimony fails to meet any of these requirements. First, we question whether the ambiguous remark in question, allegedly made to the fifteen-year-old witness, is significantly relevant to an alleged sexual attack on an eight-year-old child three years later. The testimony does not with any power "tend logically and by inference to establish a fact material to the state." McMichael, supra, 94 Nev. at 188, 577 P.2d at 401. When the connection between two acts is not clearly perceived, evidence of the uncharged act should be excluded. Id. at 190, 577 P.2d at 401; People v. Kelley, 424 P.2d 947 (1967). Czabot's testimony could not be introduced to prove a common design or plan, since the "offense" was remote in time, involved someone quite different from the victim of the charged crime, and involved distinctly different conduct. Kelley, supra, 424 P.2d at 954.

Second, the only evidence that the uncharged incident occurred was the testimony of Czabot, four years after it allegedly occurred. We cannot dismiss prospects that the remark was misinterpreted, or that hindsight greatly distorted the significance and meaning of appellant's remark. The prosecution should not be allowed to make its case on the basis of unreliable testimony about a remote event. Unsubstantiated charges of misconduct hinder the defense and present a grave danger to the fairness of the trial.

Third, we note the court made no finding that the probative value of the evidence outweighed its prejudicial effect. All evidence is subject to such a finding. NRS 48.035(1). Even relevant, convincing evidence may be excluded if it is highly prejudicial. Williams v. State, 95 Nev. 830, 603 P.2d 694 (1979). Czabot's testimony was highly prejudicial because it implied that the appellant possessed abnormal sexual desires. This created an atmosphere in which the appellant could be convicted because he appeared to be immoral and not because the state had proved its case beyond a reasonable doubt. This effect was exacerbated by the lack of a curative instruction, either at the time of Czabot's testimony or with the final jury instructions. Further, we note that the state heavily relied on Czabot's testimony in closing argument, thereby increasing the possibility of prejudice.[2]

Under these circumstances, we cannot conclude that the introduction of Czabot's testimony was harmless error. Accordingly, we reverse the judgment and remand for a new trial.

---

[2]The prosecutor made the following statement:

When Pauline took the stand and told you exactly what happened, that in no uncertain terms that the defendant made an overt sexual proposition towards her, unrebuttable by any testimony, it stands on its own and it shows you what kind of a man the defendant can be with a girl. Imagine a 19-year-old on the stand and how she looks, four foot, eleven, very petite little girl. Image the little girl's body she must have had when she was 15, and the defendant. Sure he never touched any of these adults [the character witnesses] that testified. They can fight back. Melissa couldn't. He thought maybe Pauline wouldn't. He was wrong. He showed himself to be exactly what he is. No pillar of our society, no part of our society. He deserves to be not a part of our society. He deserves to be put away. He deserves nothing from us.